509 So.2d 1189 (1987)
CATV SUPPORT SERVICES, INC. and Cna Insurance Companies, Appellants,
v.
Philip B. LOHR, As Personal Representative for the Estate of Robbie Gene Booe, Appellee.
No. BM-256.
District Court of Appeal of Florida, First District.
June 26, 1987.
Neal L. Ganon of Adams, Kelley & Kronenberg, Miami, for appellants.
Yvonne E. Reed, Ft. Lauderdale, for appellee.
SHIVERS, Judge.
The employer/carrier, CATV Support Services, Inc., and CNA Insurance Companies, appeal from the deputy commissioner's final order awarding claimant[1] attendant care benefits. The issue in this appeal is whether the deputy commissioner properly awarded Robbie Gene Booe (claimant) attendant care benefits for services his family and friends performed for him following his industrial accident. We find the deputy commissioner's award was correct, and affirm.
Claimant was injured on November 19, 1983, while working as a linesman for CATV Support Services, when a car ran off the road and crashed into a truck in front of which he had been standing. The crash severed claimant's right leg and broke his left ankle. Claimant was discharged from the hospital on December 28, 1983. Friends drove him to his parents' home in Lexington, North Carolina, on December 30, 1983.
Claimant's mother cared for him initially, cooking his meals, washing his clothes, helping him dress, and changing the dressing on his amputated leg. Claimant's father also assisted by helping claimant move around the house. Claimant's parents soon found that the care they were providing for their son interfered with their jobs, and claimant was forced to move in with his grandmother during the second week of January in 1984. At no time during this period did the employer/carrier offer claimant attendant care benefits.
Claimant's 68-year-old grandmother looked after his needs while he remained with her[2], but she, too, soon found the task of caring for claimant too burdensome. Claimant then moved in with his aunt, Etta Mothershead, who lives in Salsbury, North Carolina. Claimant's aunt continues to care for him in a manner similar to his mother and grandmother, cooking his meals, changing his clothes, changing his bed, and helping him around the house.
*1190 The deputy commissioner held hearings in February and March of 1986 and ultimately entered an order granting claimant attendant care benefits. The deputy commissioner stated in his order:
I do not feel that the care and services provided by claimant's aunt, Etta Mothershead ... fell within the rule excluding gratuitous family services, even though such services involve shopping for food, clothing, doing laundry and similar household services.
One of the decisions which the deputy commissioner found persuasive in determining that the tasks claimant's aunt rendered were outside of the rule excluding gratuitous family services was Walt Disney World v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983), a case which both parties discuss in considerable detail in their respective briefs. The deputy commissioner also observed that claimant had ordinarily lived in Miami and was forced to move to North Carolina and impose himself upon family members who had substantially departed from their daily routine to provide him with special care and services required during his recovery. Finally, the deputy commissioner indicated that the employer/carrier should have offered or furnished claimant attendant care benefits because the nature and severity of claimant's injuries gave it constructive knowledge that claimant was in need of such care.
The employer/carrier contends that the services which claimant's family members rendered were merely gratuitous and hence noncompensable under section 440.13(2)(d), Florida Statutes (1985), which provides:
The employer shall provide appropriate professional or nonprofessional custodial care when the nature of the injuries so requires; but family members may not be paid for such care when the services they provide do not go beyond those which are normally provided by family members gratuitously.
Although the employer/carrier acknowledges that we affirmed, on facts very similar to those presently before the court, an award of attendant care benefits in Walt Disney World v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983), it nonetheless maintains that Walt Disney World is factually distinguishable from the instant case and thus should not have governed the deputy commissioner's decision in awarding benefits. Walt Disney World concerned a dancer who injured her back while performing a dance routine at the Magic Kingdom. The woman's injury necessitated a spinal operation, and during her convalescence she wore a full body cast. Although the woman normally lived alone, she was forced, because of her restricted movement, to rely on her mother and a friend for their help in washing, feeding, and assisting her around the house, as well as in changing her bed. Like the claimant in the case at bar, the claimant in Walt Disney World was never advised that her workers' compensation benefits would cover her necessary attendant care. The woman filed a claim with the insurance carrier for attendant care benefits which Disney had refused to pay. The deputy commissioner awarded the claimant attendant care benefits, and Disney appealed.
On appeal, Disney argued that the deputy commissioner's award of attendant care benefits amounted to a "prohibited windfall because the act only reimburses a claimant for the economic loss suffered." 443 So.2d at 392. This court rejected that argument and affirmed the deputy commissioner's award. Judge Zehmer, writing for the court, initially observed that "[i]n the usual case, time spent for shopping, cooking, and performing other ordinary household services by a spouse or other family member is considered gratuitous and cannot form the basis for an award of attendant care services." Id. at 393 (citations omitted). The court acknowledged, however, that an exception to this rule exists when "a spouse or family member provides services that go beyond those which would normally be provided on a gratuitous basis," and that in these circumstances, "compensation for nursing or attendant care services may be awarded." Id. This result is consistent with the purpose of section 440.13(1) which is not "to burden family members with medically required nursing services and unskilled attendant care when claimant leaves *1191 the hospital and returns home." Id. Thus, because the claimant's mother and friends had "substantially departed from their usual daily routine to visit her and provide special care and services required" to assist in her recovery, we held that the deputy commissioner had correctly awarded claimant attendant care benefits, and remanded the case for determination of what benefits were due claimant in light of the "quantity, quality, and duration of the care and services" which the claimant's mother and friends had provided. Id.
The employer/carrier argues that our holding in Walt Disney World should not apply in the instant case because, it contends, the "substantial departure" which necessitated payment of attendant care benefits in that decision was that the mother and friend had to travel to the claimant's house to care for her. Because claimant's family was not required to travel in the instant case, the employer/carrier maintains they did not "substantially depart" from their daily duties in the manner which occurred in Walt Disney World.
We find this distinction unpersuasive. Nothing in the language or rationale of the Walt Disney World decision indicates that this court meant to strictly limit the holding of that case to instances where a claimant's family and friends have had to travel in order to assist a claimant in convalescing. Rather, Walt Disney World teaches that where family or friends have had to substantially depart from their daily routine in order to care for an injured claimant, the claimant is entitled to an award of attendant benefits which is commensurate with such departure notwithstanding the fact that "such services involv[e] shopping for food, cooking, doing laundry, and similar household services." 443 So.2d at 393. The "travel" which the claimant's mother and friend had to undertake in Walt Disney World is merely one way, albeit not the only way, in which substantial departure may occur. Indeed, the record in the instant case supports the deputy commissioner's conclusion that claimant's family went "beyond ... [what] would normally be provided on a gratuitous basis... ." Wlat Disney World, 443 So.2d at 393, (citing Rich International Airways v. Cahvasquis, 416 So.2d 902 (Fla. 1st DCA 1982)).
First, although it is the claimant's burden to "prove by competent, substantial evidence the quantity, quality, and duration of the attendant services claimed," Walt Disney World, 443 So.2d at 393 (citing Thatcher Glass Manufacturing Co. v. Buyna, 411 So.2d 1029 (Fla. 1st DCA 1982)), the employer/carrier, as indicated in the deputy commissioner's order, introduced no witnesses at the hearing below for the purpose of refuting claimant's contention that he was entitled to attendant care benefits. Second, claimant did prove by competent, substantial evidence that previous to his accident, he lived alone in Miami and that he had to prevail upon his relatives and friends for help because he had nowhere else to go. This mirrors the situation in Walt Disney World where the claimant had ordinarily lived alone before her injury. Claimant also produced evidence demonstrating that he was not adjusting well to his accident and was profoundly depressed. It follows that a person in claimant's condition needed someone to do his cooking, cleaning and household chores. Moreover, as the deputy mentioned in his order, claimant introduced the testimony of Dr. Millheiser, an orthopedic surgeon, which indicated claimant required attendant care for assistance in bathing, physiotherapy for his ankle, ambulation on his prosthesis, and driving to doctor's appointments. These services are clearly outside the realm of general gratuitous family services.
In sum, claimant suffered a devastating accident causing him severe pain and depression making it impossible for him to continue to live alone. This necessitated that claimant call on his family to provide him with virtually all of his daily needs, which appear to have been extraordinary. This was a unique and inordinate burden for claimant's family to shoulder; unique because claimant had not resided with his family for the previous six years; inordinate because whatever care claimant's family may have given him as a healthy and *1192 normally functioning adolescent (claimant was 24 years old when he was injured) does not compare with the prospect of providing the hourly attention and companionship claimant needed, and on which he was almost totally dependent. As in Walt Disney World v. Harrison, claimant's family substantially departed from their daily routine in caring for him, and the deputy commissioner correctly found that he was entitled to be compensated for this departure. If "[i]t is not the purpose for section 440.13 to burden family members with medically required nursing services and unskilled attendant care when claimant leaves the hospital and returns home," Walt Disney World, 443 So.2d at 393, then the purpose of the statute would surely have been frustrated had the deputy commissioner allowed the efforts of claimant's family to go uncompensated.
AFFIRMED.
ERVIN and ZEHMER, JJ., concur.
NOTES
[1] Appellee is the personal representative of the estate of claimant Robbie Gene Booe who died on January 26, 1987.
[2] Claimant testified that he stayed with his grandmother until June of 1984.